UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KERRI L. JAMES,

Plaintiff,

v.                                               Case No. 1:15-CV-67

MUNSON MEDICAL CENTER,                           HON. ROBERT HOLMES BELL

Defendant.

_____/

**O P I N I O N**

Plaintiff Kerri L. James was employed by Defendant Munson Medical Center ("Munson") from October 2004 to May 14, 2013. Plaintiff claims that Defendant retaliated against her in violation of the Family and Medical Leave Act ("FMLA"), and refused to accommodate her in violation of the Americans with Disabilities Act ("ADA"). Before the Court is Defendant's motion for summary judgment (ECF No. 21). Plaintiff has filed a response and Defendant has filed a reply. The Court has determined that oral argument is not necessary to resolve the motion. For the reasons that follow, the motion will be granted.

**I.**

Rule 56 of the Federal Rules of Civil Procedure requires the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the

proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "[T]he district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). When such a motion is filed by the defendant, the "plaintiff must do more than rely merely on the allegations of her pleadings or identify a 'metaphysical doubt' or hypothetical 'plausibility' based on a lack of evidence; [a plaintiff] is obliged to come forward with 'specific facts,' based on 'discovery and disclosure materials on file, and any affidavits[.]'" *Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009) (quoting Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586-87). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

**II.**

The following facts are not disputed. Munson employed Plaintiff as a telemetry technician starting in October 2004. Telemetry technicians work in the cardiology department, and are responsible for observing machines that monitor patients' cardiac rhythms and reporting any irregularities to a registered nurse or physician. The position must be staffed 24 hours a day, 7 days a week. Plaintiff was classified as a "16-40 flex employee," meaning that Munson could schedule her to work between 16 and 40 hours per week. She

generally worked 12-hour shifts, between midnight and 8 am.

Munson had a policy regarding FMLA leave. An employee could take up to 12 weeks of leave in any 12-month period. An employee requesting leave for her own serious health condition was required to provide a medical certification from a health care provider to support the request. Per Munson's policy, an employee could receive an extended medical leave beyond 12 weeks, not to exceed 6 months in any 9-month period.

Plaintiff alleges that she has a "migraine head[ache] disability." (Compl. ¶ 23, ECF No. 1.) In 2007, she submitted a request for intermittent FMLA leave related to her migraines. Munson approved her request. In January 2012, Plaintiff filed a complaint with the Department of Labor, asserting that her leave time had been incorrectly calculated. After an investigation, Munson corrected the error. Thereafter, Plaintiff requested intermittent FMLA leave to care for her mother. This request was granted.

In May 2012, Plaintiff's healthcare provider submitted a certification indicating that Plaintiff needed to be absent from work for 3 to 5 days per month due to her migraine headaches. The healthcare provider indicated that "16 hours of rest between shifts would help . . . quite a bit." (Def.'s Br. in Supp. of Mot. for Summ. J. 4, ECF No. 22.) In July 2012, Plaintiff met with her boss and Munson's human resources specialist, Bill Brundage, to discuss her need for 16 hours of rest between shifts.[1] On July 11, 2012, she sent an email to Brundage and her boss complaining about changes to her schedule.

---

[1] Plaintiff claims that her request was denied. Munson claims that it used best efforts to comply with Plaintiff's request.

On December 20, 2012, Plaintiff called in to report that she would not be able to work that day due to a migraine. At the time, she had used all of the FMLA leave allowed by Munson's policy. For the next two weeks, she failed to report to work. On January 4, 2013, Munson sent her a letter advising her that she had no more leave time available under the FMLA. The letter requested that she provide a certification from a healthcare provider to support her absence, as well as a written request to seek either (1) an extended leave of absence, or (2) "an ADA accommodation for hours that exceed your FMLA available time and the currently authorized 3-5 days per month." (Letter to Pl., ECF No. 22-8.) In response, Plaintiff submitted a leave of absence request, along with a certification from a healthcare provider indicating that she needed 2 to 7 days off per month. (Def.'s Br. 5, ECF No. 22.)

Because Plaintiff had already been absent for longer than 7 days, Munson asked for additional information. (Letter to Pl., ECF No. 22-9.) In response, Plaintiff submitted a letter from a psychologist, Michelle McMellen, dated January 23, 2013, advising that Plaintiff had been under McMellen's care from December 18, 2012, to the date of the letter, for "symptoms of severe depression and anxiety related to medical issues, and the offering of a severance package from Jeff Rose, Director of Human Resources. . . . As a result, she has been experiencing complications in her medical conditions and well-being." (McMellen Letter, ECF No. 22-10.) The letter did not indicate whether Plaintiff was capable of returning to work. Nevertheless, Munson extended Plaintiff's leave. On January 30, 2013, it notified

4

Plaintiff that she could continue on leave for up to 6 months in a 9-month period of time, provided that she could support her leave with appropriate medical documentation.

Plaintiff sent Munson a number of notes from her physician, Dr. McComb:

- "Please excuse from work until 1/21/13." (January 17, 2013)
- "Please excuse . . . from work until further notice. Will be re-evaluated in 3 weeks." (January 21, 2013)
- "Patient has appointment tomorrow @ 4 pm. Will see/eval then." (February 11, 2013)
- "Please keep . . . off work until re-evaluated here in 2 w[eeks]." (February 12, 2013)
- "Please cont. to keep off work until re-evaluated in 3 weeks." (February 26, 2013)
- "May return to work 4/2/13 without restrictions." (March 15, 2013).

(Health Care Provider Notes, ECF No. 22-12, PageID.126–31.) Although not specified in these notes, by February of 2013, Plaintiff was seeing Dr. McComb for depression. (Pl.'s Dep. 77, ECF No. 22-2.)

On April 2, 2013, Munson received a fax from a psychiatrist, Dr. Lapo, who indicated regarding Plaintiff: "Off work pending reevaluation. On new meds." (Fax, ECF No. 26-8.) Munson asserts that it then requested additional information because Dr. Lapo's note was not consistent with that of Dr. McComb.

On April 29, 2013, Munson sent Plaintiff a letter indicating that it had not received additional documentation to clarify whether her condition required additional leave. Nevertheless, it extended her leave until May 14, 2013. Because, as of May 14, Plaintiff

would have been off work for a total of 6 months in the preceding 9-month period, the letter also indicated that Munson would terminate Plaintiff unless she was "released to return to work." (Letter, ECF No. 22-13.)

On May 1, Dr. Lapo's office sent Munson a certification indicating that Plaintiff was experiencing a "period of incapacity lasting more than three consecutive, full calendar days[.]" (ECF No. 22-14.) According to the certification, Plaintiff "describes panic attacks when she even [__] near her[] work. When working @ Munson, low energy, concentration, difficulty getting out of bed. Also lead[s] to increase in migraine frequency and intensity." (*Id.*) The certification form asks for the "[p]robable duration of the condition" and Dr. Lapo stated that it began on "12/12" and would end on a date that is "unclear." (*Id.*) The form also asks whether the employee is unable to perform "any of [her] job functions due to the condition," and Dr. Lapo marked "yes." (*Id.*) The next question asks whether work restrictions are required, and the duration of such restrictions, but this was left blank. The next question asks if it is "necessary for the employee to work only intermittently or to work less than [a] full schedule as a result of the condition," and Dr. Lapo marked "no." (*Id.*) According to Plaintiff, Dr. Lapo answered "no" to this question because Plaintiff's condition was not intermittent; it was continuous, and Dr. Lapo did not know when Plaintiff could return to work, if ever, as he did not know when she would recover. (Pl.'s Dep. 84-85, ECF No. 22-2.) Plaintiff did not provide additional information, and did not return to work by May 14. Munson terminated her effective May 14, 2013.

6

### III.

**A. Count I: FMLA**

In Count I of the complaint, Plaintiff alleges that Munson retaliated against her for filing a complaint with the Department of Labor regarding Munson's failure to comply with its obligations under the FMLA. To establish a prima facie case of retaliation under the burden-shifting test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), Plaintiff must show that "(1) she availed herself of a protected right under the FMLA . . . , (2) she suffered an adverse employment action, and (3) . . . there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action." *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006). "If the employee satisfies these three requirements, the burden shifts to the employer to proffer a legitimate, nondiscriminatory rationale for discharging the employee." *Id.*

It is not disputed that Plaintiff's filing of a complaint with the Department of Labor satisfies the protected-activity prong of her retaliation claim. As to the second prong, Plaintiff alleges several actions by Defendant: in January 2013, she was told that her FMLA leave allotment had expired; she was told that Munson could not accommodate her request for time off due to a holiday; she was "counseled for infractions that her coworkers were not"; she was told she could not pick up hours "because of her FMLA"; she was paid $10.51 per hour while a comparable new hire was paid $15.00 per hour; the "terms and conditions of [her]

employment were altered" and she was assigned duties performed by nursing assistants, including heavy lifting; and she was terminated. (Compl. 2-3, ECF No. 1.)

Munson asserts that Plaintiff's evidence does not suffice to establish a prima facie case of retaliation, focusing specifically on Plaintiff's termination. Plaintiff apparently concedes that she does not have evidence to support a claim under the FMLA, as her response does not address the FMLA claim at all.

In any event, the Court agrees that there is no evidence supporting a causal connection between her termination in 2013 (or any of the other alleged adverse actions) and her complaint with the Department of Labor. Consequently, Defendant is entitled to judgment as a matter of law with respect to Plaintiff's FMLA claim.

**B. Count II: ADA**

In Count II of the complaint, Plaintiff alleges that she is disabled due to a migraine headache condition. She alleges that she requested an accommodation of 16 hours of rest between shifts, but Munson refused this accommodation, requiring her to take FMLA leave when her headaches worsened. Plaintiff also alleges that Munson terminated her for taking leave that she needed to accommodate this disability.

To establish a prima facie case of employment discrimination under the ADA, Plaintiff must show that: "'1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position

remained open while the employer sought other applicants or the disabled individual was replaced.'" *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011) (quoting *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007)). If Plaintiff has made out a prima facie case, the burdens shifts to Defendant to articulate a non-discriminatory reason for its employment action. *Id.* Once Defendant does so, the burden shifts back to Plaintiff to prove that Defendant's explanation is pretextual. *Id.* "An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 783 (6th Cir. 1998).

Munson asserts that Plaintiff cannot establish a prima facie case or show that she suffered an adverse employment decision because of a disability. As to her request for an accommodation of 16 hours between shifts, Plaintiff claims that this request was denied, but she offers no evidence to support this assertion. Indeed, in her deposition, she acknowledged that she was granted intermittent FMLA leave to cover both her need for days off during the month as well as her need for 16 hours of rest between shifts. (Pl.'s Dep. 40, ECF No. 22-2.) Thus, there is no evidence that would create a genuine issue of material fact as to whether Munson denied Plaintiff her requested accommodation for days off and rest between shifts.

As to her termination, Munson contends that it is undisputed that she was terminated because she failed to return to work and she did not provide sufficient documentation to support the need for additional leave. In other words, Munson claims there is no genuine

9

dispute that she was not terminated on account of her alleged disability. According to Munson, the evidence before it in May 2013 indicated that Dr. McComb had cleared Plaintiff for work on April 2, 2013. Dr. Lapo subsequently indicated that Plaintiff was suffering from a mental health condition requiring treatment, but he also indicated that she would not need to work less than her full schedule. Consequently, Munson argues that Plaintiff's medical documentation did not justify an accommodation for additional leave, and it was not a violation of the ADA for Munson to terminate her for failing to return to work without sufficient justification.

Plaintiff interprets Dr. Lapo's certification differently. When Dr. Lapo indicated that Plaintiff would not need to work less than her full schedule, he was responding to a question about the need for intermittent leave. According to Plaintiff, Dr. Lapo stated that Plaintiff did not need intermittent leave because her condition was continuous, not intermittent. Construing the evidence in Plaintiff's favor, Dr. Lapo did not indicate that Plaintiff was capable of returning to work; to the contrary, he implied that she was incapable of doing so. This interpretation does not save Plaintiff's case, however, because Dr. Lapo was apparently referring to Plaintiff's anxiety and panic attacks, as well as migraine headaches. Plaintiff's ADA claim is based solely on her migraine headaches.[2] There is no genuine dispute that her headaches did not require a continuous leave of absence. At least one physician reported that

---

[2]In her deposition, Plaintiff reported that she was referred to Dr. Lapo for depression, and he diagnosed her with post-traumatic stress disorder ("PTSD") (Pl.'s Dep. 77-78, 85, ECF No. 22-2); however, PTSD and depression are not the bases for the ADA claim asserted in the complaint (or in the response to the motion for summary judgment).

they would limit Plaintiff from working for a few days out of a month. Another physician reported that Plaintiff was capable of returning to work in early April 2012. In his report, Dr. Lapo suggested that working at Munson had caused her headaches to increase in frequency, but he did not indicate that they were the cause of her incapacity. In her response to the motion for summary judgment, Plaintiff asserts that she suffers from "severe migraine headaches that require rest *when they occur*." (Pl.'s Br., PageID.150 (emphasis added).) She does not contend, and there is no evidence indicating, that her headache condition prevented her from working in May 2013, or for the five consecutive months preceding that time.

     Munson also asserts that, even if Dr. Lapo opined that Plaintiff could not return to work, Munson did not violate the ADA because it was not required to grant an indefinite leave of absence. During the five months that Plaintiff was absent from work, she never requested any form of accommodation for her alleged disability other than additional leave, and she never provided specific details regarding her limitations other than a doctor's certification that she would not be able to work 2 to 7 days out of the month. Eventually, Dr. McComb expressly indicated that she could work without restrictions. Dr. Lapo subsequently indicated that Plaintiff was "off work," and was taking new medications, but he did not indicate why Plaintiff was "off work" at the time, and approximately four weeks later, he could not estimate a date of resolution. Two weeks after that, Plaintiff still had not returned to work or provided additional evidence to support further leave time. Thus, the Court agrees

that her implied request for an additional leave of absence was not justified. Munson could properly terminate her for failing to justify her requested accommodation.

Moreover, the Court agrees with Munson that Plaintiff's request for an indeterminate amount of additional leave was not reasonable under the circumstances. *See Harris v. Circuit Court*, 21 F. App'x 431, 432 (6th Cir. 2001) ("The ADA does not require an employer to give an employee an indefinite leave of absence when the employee cannot provide the expected duration of her impairment."); *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1187 (6th Cir. 1996) (noting that "employers are under no duty to keep employees on unpaid leave indefinitely until [an available] position opens up"), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012). Plaintiff contends that Dr. Lapo's request was not a request for an indefinite leave of absence; it was of limited duration, to permit an opportunity to allow for Plaintiff's medication to be regulated. This assertion is not supported by any evidence. Dr. Lapo's certification does not specify any limits in terms of duration. Nor does it indicate that the reason for Plaintiff's incapacity is the need to regulate her medication. It merely states that she is suffering a period of incapacity, that she has been suffering from her condition for almost five months, and that the expected duration of her condition is unclear. "[W]hen, as here, an employer has already provided a substantial leave, an additional leave period of a significant duration, with no clear prospects for recovery, is an objectively unreasonable accommodation." *Walsh v. United Parcel Service*, 201 F.3d 718, 727 (6th Cir. 2000).

Plaintiff contends that it is Defendant's burden to establish that an accommodation would impose an undue hardship; however, it is Plaintiff's burden to establish that the accommodation that she requested is "reasonable." *Monette*, 90 F.3d at 1187; *see also Cehrs*, 155 F.3d at 781 (noting the plaintiff's burden to establish that "a reasonable accommodation is possible"). She has not satisfied her burden for purposes of summary judgment. Indeed, Plaintiff does not explain how the migraine headache condition that she claims as her disability would have required a continuous leave of absence for even one month (from December 20, 2013 to January 23, 2013), let alone five months or more. Consequently, the Court will grant Munson's motion for summary judgment because there is no genuine dispute that the accommodation requested by Plaintiff for her alleged disability was not reasonable.

An order and judgment consistent with this opinion will be entered.

Dated: March 17, 2016                              /s/ Robert Holmes Bell
                                                   ROBERT HOLMES BELL
                                                   UNITED STATES DISTRICT JUDGE